**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:   (619) 343-2789

**Counsel for Plaintiff and the**
**Proposed Settlement Class**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE ALTES, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>SAMBAZON, INC.<br><br>Defendant. | Case No: 8:19-cv-1340-JLS-JDEx<br>Pleading Type: Class Action<br>Action Filed: July 8, 2019<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: The Honorable Josephine L. Staton.<br>Date:   March 6, 2020<br>Time:  10:30 a.m.<br>Location: Courtroom 10A |

## NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

**PLEASE TAKE NOTICE** that on March 6, 2020 at 10:30 a.m., or as soon thereafter as the case may be heard, in Courtroom 10A, 10th Floor, of this Court, located at 411 W. Fourth St., Santa Ana, CA 92701, Plaintiff Steve Altes will and hereby does move this Court for an Order granting preliminary approval of his Class Action Settlement Agreement.

This motion is made pursuant to Federal Rule of Civil Procedure 23(e) and (b)(2) and is based on this Notice, the accompanying Memorandum of Points and Authorities, the attached Declarations of Gregory S. Weston, and Gajan Retnasaba and exhibits thereto, the [Proposed] Preliminary Approval Order, the pleadings and papers on file herein, and such other matters as may be presented to the Court at the time of the hearing.

Dated: December 27, 2019             /s/ Gregory S. Weston
                                     Gregory Weston


                                     **Counsel for Plaintiff and the Proposed Settlement Class**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................1

I.      INTRODUCTION ..........................................................................................1

II.     STATEMENT OF FACTS ..............................................................................1

III.    TERMS OF THE SETTLEMENT AGREEMENT ........................................2

    A.      The Settlement Class ...........................................................................2

    B.      Injunctive Relief .................................................................................3

    C.      Class Notice .........................................................................................5

    D.      Attorney Fees and Costs and Incentive Award to Class Representatives ...........6

    E.      Release .................................................................................................6

    F.      Opportunity to Opt Out and Object .....................................................6

IV.     ARGUMENT ..................................................................................................7

    A.      The Settlement Agreement Satisfies The Standard for Preliminary Approval. ...........7

        1.      The Strength of Plaintiff's Case ................................................9

        2.      The Risk, Expense, Complexity, and Likely Duration of Further Litigation ...........10

        3.      The Amount Offered in Settlement .........................................11

        4.      The Extent of Discovery Completed and the State of the Proceedings ...........12

        5.      The Experience and Views of Counsel ...................................12

        6.      The Settlement Negotiations Were At Arm's-Length.............12

    B.      Provisional Certification of the Settlement Class Is Proper.............12

        1.      The Settlement Class Satisfies the Numerosity Requirement...........13

        2.      The Settlement Class Satisfies the Commonality Requirement...........13

        3.      The Settlement Class Satisfies the Typicality Requirement...........14

        4.      The Settlement Class Satisfies the Adequacy of Representation Requirement...........14

i

5.    The Settlement Class Satisfies the Requirements of Rule 23(b)(2). ................................................................. 15

C.    The Proposed Form and Method of Class Notice Is Adequate and Satisfies the Requirements of Rule 23. ......................................... 17

V.    PROPOSED SCHEDULE OF EVENTS ................................................. 18

VI.    CONCLUSION ................................................................................ 19

*Altes v. Sambazon, Inc.*, Case No: 8:19-cv-01340-JLS-JDEx
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union, LLC,*
    243 F.R.D. 377 (C.D. Cal. 2007)...........................................................8

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015) ...........................................................7

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)...........................................................13

*Asghari v. Volkswagen Grp. of Am., Inc.,*
    2015 U.S. Dist. LEXIS 188824 (C.D. Cal. May 29, 2015)....................................15

*Astiana v. Kashi Co.,*
    291 F.R.D. 493 (S.D. Cal. 2013) ...........................................................14

*Bisaccia v. Revel Sys.,*
    2019 U.S. Dist. LEXIS 28773 (N.D. Cal. Feb. 22, 2019)....................................13

*Bruno v. Quten Research Inst., LLC,*
    2013 U.S. Dist. LEXIS 35066 (C.D. Cal. Mar. 13, 2013) ....................................15

*Bykov v. DC Transp. Servs.,*
    2019 U.S. Dist. LEXIS 54652 (E.D. Cal. Mar. 28, 2019)....................................9

*Camilo v. Ozuna,*
    2019 U.S. Dist. LEXIS 83794 (N.D. Cal. May 16, 2019)....................................13

*Carlin v. DairyAmerica, Inc.,*
    380 F. Supp. 3d 998 (E.D. Cal. 2019) ...........................................................7

*Caudle v. Sprint/United Mgmt. Co.,*
    2019 U.S. Dist. LEXIS 216056 (N.D. Cal. Dec. 16, 2019) ....................................17

*Chacanaca v. Quaker Oats Co.,*
    2011 U.S. Dist. LEXIS 65023 (N.D. Cal. June 14, 2011)....................................15

*Churchill Vill., L.L.C. v. GE,*
    361 F.3d 566 (9th Cir. 2004) ...........................................................7, 10

iii

*Collins v. Cargill Meat Sols. Corp.*,
   274 F.R.D. 294 (E.D. Cal. 2011) ............................................................8

*Connor v. Automated Accounts, Inc.*,
   202 F.R.D. 265 (E.D. Wash. 2001) .......................................................15

*Eddings v. Health Net, Inc.*,
   2013 U.S. Dist. LEXIS 9185 (C.D. Cal. Jan. 16, 2013) ..........................9

*Farrell v. Bank of Am., N.A.*,
   327 F.R.D. 422 (S.D. Cal. 2018) .....................................................7, 15

*Guido v. L'Oreal, USA, Inc.*,
   2013 U.S. Dist. LEXIS 94031 (C.D. Cal. July 1, 2013) ........................14

*Guttmann v. Ole Mexican Foods, Inc.*,
   2015 U.S. Dist. LEXIS 154046 (N.D. Cal. Nov. 13, 2015) ....................15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................7, 14

*Haralson v. U.S. Aviation Servs. Corp.*,
   383 F. Supp. 3d 959 (N.D. Cal. 2019) ....................................................9

*Hawkins v. Kroger Co.*,
   906 F.3d 763 (9th Cir. 2018) ...............................................................11

*Hollis v. Union Pac. R.R. Co.*,
   2018 U.S. Dist. LEXIS 228607 (C.D. Cal. Mar. 6, 2018) ........................8

*Hoover v. Mom365, Inc.*,
   2019 U.S. Dist. LEXIS 81424 (E.D. Cal. May 10, 2019) .........................8

*In re Ferrero Litig.*,
   278 F.R.D. 552 (S.D. Cal. 2011) ............................................................15

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ..................................................................7

*In re M.L. Stern Overtime Litig.*,
   2009 U.S. Dist. LEXIS 31650 (S.D. Cal. Apr. 13, 2009) .........................8

iv

*In re Montage Tech Grp. Ltd. Sec. Litig.*,
    2016 U.S. Dist. LEXIS 53734 (N.D. Cal. Apr. 21, 2016) ..................................... 13

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 8

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................ 1, 8

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ........................................................................................ 16

*Johnson v. Triple Leaf Tea*,
    2015 U.S. Dist. LEXIS 170800 (N.D. Cal. Nov. 16, 2015) ........................... 12, 16

*Keilholtz v. Lennox Hearth Prods.*,
    268 F.R.D. 330 (N.D. Cal. 2010) ........................................................................ 14

*Kline v. Dymatize Enters., LLC*,
    2016 U.S. Dist. LEXIS 142774 (S.D. Cal. Oct. 13, 2016) ..................................... 8

*Lilly v. Conagra Foods, Inc.*,
    2014 U.S. Dist. LEXIS 199102 (C.D. Cal. Sep. 19, 2014) ............................. 12, 16

*Lilly v. Jamba Juice Co.*,
    2015 U.S. Dist. LEXIS 34498 (N.D. Cal. Mar. 18, 2015) ..................................... 1

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ............................................................................... 9

*Maldonado v. Apple, Inc.*,
    2019 U.S. Dist. LEXIS 159289 (N.D. Cal. Sep. 17, 2019) ................................... 14

*Mass. Mut. Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282 (2002) ............................................................................. 16

*Muliane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................................................ 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 10

*Noroma v. Home Point Fin. Corp.*,
    2019 U.S. Dist. LEXIS 193159 (N.D. Cal. Nov. 6, 2019) ........................................8

*Officers for Justice v. Civil Servs. Com.*,
    688 F.2d 615 (9th Cir. 1982) ........................................7

*Pilkington v. Cardinal Health, Inc.*,
    516 F.3d 1095 (9th Cir. 2008) ........................................7

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) ........................................16

*Rodriguez v. Bumblebee Foods, LLC*,
    2018 U.S. Dist. LEXIS 69028 (S.D. Cal. Apr. 24, 2018) ........................................10

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010) ........................................14

*Schofield v. Delta Air Lines, Inc.*,
    2019 U.S. Dist. LEXIS 31535 (N.D. Cal. Feb. 27, 2019) ........................................13

*Shahar v. Hotwire, Inc.*,
    2013 U.S. Dist. LEXIS 104585 (N.D. Cal. July 25, 2013) ........................................14

*State Farm Fire & Casualty Co. v. Superior Court*,
    45 Cal. App. 4th 1093 (1996) ........................................16

*Vaquero v. Ashley Furniture Indust.*,
    824 F.3d 1150 (9th Cir. 2016) ........................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................13

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ........................................14

*Woodard v. Labrada*,
    2019 U.S. Dist. LEXIS 162782 (C.D. Cal. Apr. 23, 2019) ........................................17

**Other Authorities**

Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002) ......8, 9, 12

MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2005) ........................................8

MOORE'S FEDERAL PRACTICE, 23.165[3] (3d ed. 2010) ......................................................8

*Altes v. Sambazon, Inc.*, Case No: 8:19-cv-01340-JLS-JDEx
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Following several months of settlement negotiations, Plaintiff ("Representative Plaintiff") and proposed Class Counsel ("Class Counsel") are pleased to inform the Court that they have executed a settlement agreement with Defendant Sambazon, Inc. The settlement is memorialized in the Class Action Settlement Agreement ("Settlement Agreement") and resolves all claims in the Litigation.[1]

The settlement provides wide-ranging injunctive relief on a large number of Defendant's products, including all of the label changes demanded in the Complaint. It is well "'within the range of possible approval,'" such that the Court should grant preliminary approval. *See Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 34498, at *18 (N.D. Cal. Mar. 18, 2015) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks omitted)).

Plaintiff's counsel has the experience required to understand the strengths and weaknesses of their case, and the risks of proceeding through class certification, summary judgment motions, and trial. They believe the Settlement meets the standard of being fair, reasonable, and adequate. Not only that, it furthers the interest of public health by ensuring Sambazon products comply with FDA labeling regulations, provides a hard cap on the amount of sugar Defendant can use while making certain health claims that goes beyond any specific FDA regulation, and encourages compliance with the particular FDA rules by other companies by providing an example of their enforcement. For these reasons, Plaintiff respectfully requests that the Court grant preliminary approval.

## II.   STATEMENT OF FACTS

Plaintiff challenges as misleading or unlawful the following aspects of the labels of

---

[1] Unless otherwise stated, capitalized terms have the same meaning as in the Settlement Agreement, filed concurrently with this motion as **Exhibit 1** to the Declaration of Gregory S. Weston.

Sambazon's Amazon Energy products: "clean caffeine," "antioxidant rich," and "rich in antioxidants." Compl. ¶ 3. Plaintiff contends the "clean caffeine" claim is deceptive because "there is no such thing as 'clean caffeine.'" Compl. ¶ 11. He further alleges the "antioxidant rich" and "rich in antioxidant" claims are unlawful nutrient content claims because they do not comply with 21 C.F.R. § 101.54(g), rendering Amazon Energy misbranded. Compl. ¶¶ 12-15.

During the negotiation process, Altes disclosed he was in the process of preparing an amended complaint that challenged additional antioxidant and sugar claims on other Sambazon products which he believed were misleading and in violation of particular FDA labeling regulations. As described below, the settlement also requires all of these other claims to be modified to comply FDA regulations, as well as places a limit to the amount of sugar in certain products that contain representations "healthy" and "healthiest."

## III.   TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement Agreement, attached as **Exhibit 1** to the concurrently filed Declaration of Gregory S. Weston, are summarized below.

### A.   The Settlement Class

The proposed Settlement Class ("Class") includes all individuals who have purchased varieties of Sambazon, Inc.'s Amazon Energy drinks, Acai Protein Superfood Smoothie, Acai Energy Superfood Juice Blend, Acai Performance Protein Superfruit Pack, and Acai Bites (collectively the "Products") from January 1, 2010 to December 31, 2019.

Excluded from the Class are (a) persons or entities who purchased the Products for the purpose of resale or distribution; (b) persons who officers and directors of Defendant; (c) persons who timely and properly exclude themselves from the Class, as provided in the Settlement Agreement; and (d) any judicial officer hearing this Litigation.

**B.    Injunctive Relief**

**"Clean Caffeine" Provision**

Sambazon will, within 12 months of the Effective Date, discontinue the use of the phrase "clean caffeine" on the packaging of its Amazon Energy drink products.

Plaintiff challenges this phrase as inherently misleading because, in his view, all caffeine is chemically identical, and there are no "clean" and "not-clean" types. This provision represents better relief than Plaintiff could, as a practical matter, ever obtain, since an injunction barring such claim would likely take far more than 12 months to obtain.

**"Antioxidant Rich" and "Rich in Antioxidants" Provision**

Sambazon, Inc. will, within 12 months of the Effective Date, discontinue the use of the phrases "antioxidant rich" and "rich in antioxidants" on the packaging of its Amazon Energy drink products, unless these claims are made in full compliance with 21 C.F.R. § 101.54, specifically by:

(a) increasing the size of the statement that the antioxidant is vitamin C to more than 1/16 of an inch and

(b) changing the placement of the vitamin C disclosure so the antioxidant claim and the vitamin C disclosure are on the same label panel.

Plaintiff's believes Defendant's "antioxidant rich" and "rich in antioxidants" claims violate 21 C.F.R. § 101.54 in three separate ways. During the course of settlement negotiations, he was convinced that Defendant did not do this intentionally, and that Defendant's interpretation of the regulations are at least colorable. Specifically, the size and placement of the disclosure required for antioxidant claims, which discloses by name which antioxidants the antioxidant claim refers to, are governed by three different overlapping regulations. Without admitting wrongdoing, Sambazon has agreed to make the required disclosure statement in a larger and more prominent manner in accordance with what Plaintiff views as the correct interpretation of these regulations

**Use of Sugar in Product with a "Healthy" Implied Nutrient Content Claim Provision**

Sambazon will, within 18 months of the Effective Date, discontinue and refrain from using "healthy" and "healthiest" on Sambazon smoothie and juice products with more than 27g of sugar per serving.

Currently, the FDA has a set of rules that limit the amount of salt, cholesterol, total fat, and saturated fat products bearing "healthy" or related terms, including but not limited to "health," "healthful," "healthfully," "healthfulness," "healthier," "healthiest," "healthily," and "healthiness." *See* 21 C.F.R. § 101.65(d). No limit on sugar is provided, creating what is now effectively a "loophole" in the specific rules within this regulation. However, the FDA also has multiple more general rules saying implied nutrient content claims may not be misleading in any respect, and California law, to the extent it is not preempted here, also prohibits misleading food label claims.

Here, the settlement agreement provides a specific limit to the amount of sugar in Sambazon juices and smoothies that make "healthy" claims. The slightly longer 18 month period to comply reflects that this provision deals with not just label claims, but product formula. For example, Sambazon's Organic Acai Energy Superfood Juice Blend contains 37g of sugar per serving, and this would have to be reduced to 27g or less.

**"Naturally Sugar Free" Provision**

Sambazon, Inc. will, within 12 months of the Effective Date, with respect to its Acai Performance Protein Superfruit Packs and Sambazon Acai Bites, either discontinue using the phrase "naturally sugar free" or revise the product such that it contains less than 1g of sugar per serving.

On these two products, Sambazon uses the phrase "naturally sugar free" to describe the acai berry ingredient in these products. Other ingredients, however, do contain sugar, meaning this statement is potentially misleading. Defendant has agreed to stop using the phrase "naturally sugar free" to describe the acai ingredient unless the product containing the ingredient is also less than 1g of sugar per serving.

### "**Packed with Antioxidants**" Provision

Sambazon, Inc. will within 12 months of the Effective Date, with respect to its Acai Performance Protein Superfruit Packs and Sambazon Acai Bites, discontinue using the phrase "packed with antioxidants" or, alternatively, revise the formula such that it contains at least 10% of the RDI of at least two antioxidants, or such other changes consistent with 21 C.F.R. §§ 101.13 and 101.54.

This provision corrects what Plaintiff believes is the potentially misleading or unlawful use of the plural "antioxidants" on two products that contain the minimum level of only one single FDA-recognized antioxidant nutrient, namely vitamin C. As with other allegations of label-law violations, Plaintiff believes the current labeling does not represent any bad faith or intentional deceit by Defendant, but likely resulted from the fact that the FDA only recognizes certain chemicals as antioxidants, while natural food advocates believe there are more beneficial antioxidants than the FDA recognizes in its regulation authorizing certain antioxidant nutrient content claims.

### C.    Class Notice

The Parties have retained notice expert Gajan Retnasaba of Classaura to prepare a plan and disseminate settlement notice. *See* Settlement Agreement Section 10 & Retnasaba Decl. ¶¶ 2-13; Weston Declaration ¶ 11, Ex. 3 (Class Notice). The primary method of class notice will be via Facebook, which for several reasons the parties and Classaura believe meets the standard of best method practicable. Retnasaba Decl. ¶¶ 2-6. First, Facebook is not only the most used website in the United States, but is also the most popular medium for advertising of any form. Second, Facebook allows for targeted advertising. Here, the notice will be targeted toward individuals who have in some way expressed interest in Sambazon, antioxidants, superfruit, acai, and acerola. Retnasaba Decl. ¶¶ 2-6. Third, Facebook has a feature that allows advertisers to avoid "duplicate" impressions where the same individual is shown the same add multiple times. This allows for the widest possible distribution of notice.

Mr. Retnasaba has frequently prepared class notice plans in consumer class actions that have been approved by District Courts in California. Retnasaba Decl. ¶ 1.

### D.    Attorney Fees and Costs and Incentive Award to Class Representatives

The Settlement Agreement permits Plaintiff to apply for an incentive award of $2,500 and for his counsel to seek up to $52,000 in fees and costs. Settlement Agreement Section 14. Defendant agrees not to oppose such an application, provided that they do not exceed the agreed-upon amount. Settlement Agreement Section 14.

Counsel for Plaintiff has reviewed the section about fee motions in civil cases on the Court's Procedures page, as well as the sample attorney fee Excel spreadsheet, and will fully comply with the requirements.[2]

### E.    Release

Upon entry of a final order approving the Settlement Agreement and the favorable resolution of any subsequent appeals, every Class Member who has not filed a Request for Exclusion from the Settlement Class shall be deemed to have released and forever discharged Defendant and the other Released Parties, as defined in the Settlement Agreement, from any and all Released Claims as set forth in Section 11 of the Settlement Agreement.

### F.    Opportunity to Opt Out and Object

The settlement provides Class Members who wish to pursue their own claims against Defendant, or are otherwise unhappy with its terms, with the opportunity to opt out. Settlement Agreement Section 13. Class Members will also have the opportunity to

---

[2] Counsel also reviewed several of this Court's prior preliminary approval orders where it ordered changes or corrections to class notice and the proposed schedules, and was careful to avoid issues the Court identified in these prior cases. First, the objection and opt-out deadline is 15 days before the filing of the complete final approval motion and fee motion. Second, contact information for proposed class counsel is provided in the class notice, including an e-mail address and telephone number. Third, the notice website will be updated with these motions and supporting documents promptly after they are filed. Fourth, opt-outs may be submitted using the settlement website.

object to the Settlement Agreement, and those who object may also appear at the Fairness Hearing if they separately file a notice of intent to appear under the procedure set forth in the Long Form Notice and Section 13 of the Settlement Agreement. Class Counsel will submit their request for attorney fees and expenses forty-two days before the Fairness Hearing, allowing Class Members sufficient time to review the application and, if they choose to do so, object under the procedure set forth in the Class Notice and Settlement Agreement Section 13.1.

## IV. ARGUMENT

### A. The Settlement Agreement Satisfies The Standard for Preliminary Approval.

Public policy "strong[ly] . . . favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)); *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same); *accord Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004). In evaluating a settlement, "'[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness'" *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1009 (E.D. Cal. 2019). *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (same). Thus, a court's evaluation of a class action settlement is

> limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Farrell v. Bank of Am., N.A.*, 327 F.R.D. 422, 430 (S.D. Cal. 2018) (quoting *Officers for Justice v. Civil Servs. Com.*, 688 F.2d 615, 625 (9th Cir. 1982)); *accord Hanlon*, 150 F.3d at 1027.

Court approval of class settlements is "'a two-step process—preliminary approval, followed by final approval of the settlement after notice to the class.'" *Kline v. Dymatize*

*Enters., LLC*, 2016 U.S. Dist. LEXIS 142774, at \*5 (S.D. Cal. Oct. 13, 2016) (quoting *In re M.L. Stern Overtime Litig.*, 2009 U.S. Dist. LEXIS 31650, at \*8 (S.D. Cal. Apr. 13, 2009)). "At the preliminary approval stage, the Court 'must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Hollis v. Union Pac. R.R. Co.*, 2018 U.S. Dist. LEXIS 228607, at \*4 (C.D. Cal. Mar. 6, 2018) (citation omitted). "The settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." *Hollis*, 2018 U.S. Dist. LEXIS 228607, at \*5 (quoting *Acosta v. Trans Union*, *LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). *See also* Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS §11.25 (4th ed. 2002) ("*Newberg*") (same); MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2005).

In contemplating the preliminary approval of a proposed settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Noroma v. Home Point Fin. Corp.,* 2019 U.S. Dist. LEXIS 193159, at \*19 (N.D. Cal. Nov. 6, 2019) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)). Additionally, a party's motion for preliminary approval does not demand a final analysis of the settlement's merits. Instead, a more detailed assessment is reserved for the final approval after class notice has been sent and class members have had the opportunity to object to or opt-out of the settlement. *See* MOORE'S FEDERAL PRACTICE, 23.165[3] (3d ed. 2010). Accordingly:

> Preliminary approval of a settlement and notice to the proposed class is appropriate if "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with[in] the range of possible approval[.]"

*Hoover v. Mom365, Inc.,* 2019 U.S. Dist. LEXIS 81424, at \*7 (E.D. Cal. May 10, 2019) (quoting *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 301-02 (E.D. Cal. 2011)). *See also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079; *Eddings v. Health Net,*

*Inc.*, 2013 U.S. Dist. LEXIS 9185, at *11 (C.D. Cal. Jan. 16, 2013) ("To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval . . . ."); *Bykov v. DC Transp. Servs.*, 2019 U.S. Dist. LEXIS 54652, at * 12 (E.D. Cal. Mar. 28, 2019) ("[A]t this preliminary approval stage, the court need only determine whether the proposed settlement is within the range of possible approval."). The Court may consider a variety of factors in determining the reasonableness of a settlement, including:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 967 (N.D. Cal. 2019). *See also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (same). Courts also afford great weight to arm's-length negotiations. *See Newberg* § 11.41 (4th ed. 2002). Consideration of these factors leads to the conclusion that preliminary approval of the Settlement Agreement should be granted.

### 1.    The Strength of Plaintiff's Case

While Plaintiff maintains that his claims are valid and that he would prevail at trial, he acknowledges that he would face challenges at both the class certification stage and on the merits. Plaintiff is mindful of the challenges he would face in obtaining and maintaining class certification. These challenges include, by way of example, potential difficulties arising from Defendant's use of different Product packaging over the course of the Class Period, as well as across sales channels and regions, and that the Class Members did not pay a uniform price for the Products.

Further, Plaintiff is mindful of the potential problems of proof bearing on the claims asserted in the Litigation, and that, like most class members, he did not retain proof of his purchases. These issues, in particular those arising from consumer class action damages models, have resulted in many consumer class actions being denied class certification.

Plaintiff believes that some aspects of his case are quite strong. In particular, he thinks he can show the labels of Sambazon products violated particular provisions of Title 21 of the Code of Federal Regulations issued by the FDA. Defendant, however, points out that some of these violations are what it would maintain as minor. For example, on Amazon Energy, a required disclosure is alleged to be in typeface that is smaller than what the FDA requires, and in the wrong location on the label. With such violations, Defendant will argue that there was no actual economic damages to Plaintiff.

For the claims that do not involve violations of particular FDA regulations, Defendant would likely argue these claims are preempted.

## 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Settlement provides relief to the Class without the risks, costs, and delays inherent in continued litigation, all of which are important factors in considering the reasonableness of the Settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004); *see also Rodriguez v. Bumblebee Foods, LLC*, 2018 U.S. Dist. LEXIS 69028, at *8 (S.D. Cal. Apr. 24, 2018) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush.") (internal quotation marks omitted); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (same).

Risks of not settling for the class included: (1) the claims would be dismissed, in part or in whole, (2) that a class would not be certified, or only a narrow class would be certified, (3) Plaintiff would lose the action at summary judgment or trial, (4) plaintiff

would prevail on the question of the lawfulness of the claim, but fail to prove damages, and (5) a successful outcome before this Court would be reversed or vacated on appeal.

The likely duration factor is at its maximum as this settlement began to be negotiated shortly after the case was filed, and before any motion practice.

With regard to the complexity of this action, in 2018 a Ninth Circuit panel criticized the FDA for the complexity of its food labeling regulations in another class action brought by Plaintiff's counsel. Specifically, in *Hawkins v. Kroger Co.*, the Ninth Circuit used the phrases "somewhat confusingly," "inconsistent and incomprehensive," and "mind-bogglingly complex and confusing," and noting "the degree of difficulty in sorting out and tracking down the applicable regulations" and the resulting "large amount of judicial resources" needed to interpret the FDA regulations before it. 906 F.3d 763, 766 n.1 and 771-72 (9th Cir. 2018).

*Hawkins* involved only two theories, one relating to the product's labeling and the other the use of trans fat. This case is potentially more complex, as it involves four groups of claims: antioxidant labeling, caffeine ingredient labeling, sugar health claims, and sugar nutrient content claims.

### 3.    The Amount Offered in Settlement

A potential weakness of this settlement is that it only provides injunctive relief, and not cash compensation to class members. The parties believe this is more than balanced, however, by the following factors: (1) the extent and value of the injunctive relief, (2) the relatively small amount of damages that could possibly result in an action involving the mislabeling of products that sell in some cases for less than $2.00, (3) the difficulty in proving the relatively small damages, and (4) Defendants' willingness to agree to a settlement without first seeking dismissal under Rule 12 and opposing class certification.

To put it another way, immediately obtaining labeling changes is, in our view, a better outcome than possibly obtaining nothing, but at best obtaining a small amount of money and injunctive relief  potentially years later. Such consideration has convinced

11

other courts to approve settlements where food label changes are mandated but no cash fund is distributed. *Johnson v. Triple Leaf Tea*, 2015 U.S. Dist. LEXIS 170800, at *12-13 (N.D. Cal. Nov. 16, 2015) (granting preliminary approval of injunctive-relief-only class action settlement which "afford[ed] meaningful injunctive relief" in the form of "substantial revis[ion]" to the labels of three products); *Lilly v. Conagra Foods, Inc.*, 2014 U.S. Dist. LEXIS 199102, at *2-4 (C.D. Cal. Sep. 19, 2014) (granting preliminary approval of "injunctive relief only" settlement requiring defendant to comply with applicable FDA labeling regulations).

### 4. The Extent of Discovery Completed and the State of the Proceedings

As settlement negotiations began shortly after the case was filed, no formal discovery has taken place. As part of settlement negotiations, Plaintiff requested and Defendant informally and confidentially provided sales information.

### 5. The Experience and Views of Counsel

The Class is represented by Gregory Weston of The Weston Firm who is experienced in consumer fraud and food labeling litigation. This experience is summarized in The Weston Firm's resume. *See* Weston Decl. ¶¶ 3-5, Ex. 2. In his view, the Settlement provides a substantial benefit to the Class. Weston Decl. ¶ 5.

### 6. The Settlement Negotiations Were At Arm's-Length.

"There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for approval." *Newberg* § 11.41. While the settlement does contain a "clear sailing" provision that Defendant will not oppose the fee application, this is mitigated by the low cap on the fee and expense motion, of $52,000.

### B. Provisional Certification of the Settlement Class Is Proper.

The Settlement Agreement meets the standard for provisional certification of a settlement class. In order for a class to be provisionally certified, Plaintiff "must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality,

typicality, and adequacy of representation." *Bisaccia v. Revel Sys.*, 2019 U.S. Dist. LEXIS 28773, at *7 (N.D. Cal. Feb. 22, 2019). Next, Plaintiff must "establish that at least one of the bases for certification under Rule 23(b) is met." *Bisaccia*, 2019 U.S. Dist. LEXIS 28773, at *7. *See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997) (same). While the requirements of both (b)(2) and (3) are met here, the motions undertakes the simpler analysis of (b)(2).

### 1.    The Settlement Class Satisfies the Numerosity Requirement.

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Numerosity is easily satisfied here, there is no way tens of thousands, if not hundreds of thousands, of class members, who have small claims over the purchase of Sambazon products, could ever be individually retained, joined and appear in this action. The Products at issue in the Litigation were sold in retail stores, including Sprouts, Ralphs, Target, Vons, and many smaller chains and independent grocery and convenience stores throughout the proposed Class Period. "While there is no fixed number that satisfies the numerosity requirement, '[a]s a general rule, classes of forty or more are considered sufficiently numerous.'" *Camilo v. Ozuna*, 2019 U.S. Dist. LEXIS 83794, at *18 (N.D. Cal. May 16, 2019) (quotation omitted).

### 2.    The Settlement Class Satisfies the Commonality Requirement.

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." "'Commonality requires the plaintiffs to demonstrate that the class members have suffered the same injury.'" *In re Montage Tech Grp. Ltd. Sec. Litig.*, 2016 U.S. Dist. LEXIS 53734, at *8 (N.D. Cal. Apr. 21, 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). This means that the Class Members' claims "must depend upon a common contention." *Vaquero v. Ashley Furniture Indust.*, 824 F.3d 1150, 1153 (9th Cir. 2016). The commonality requirement is "construed permissively," so that "'[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient.'" *Schofield v. Delta Air Lines, Inc.*, 2019 U.S. Dist. LEXIS 31535, at *7 (N.D. Cal. Feb. 27, 2019) (quoting

13

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998)); *see also Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 337 (N.D. Cal. 2010). "[E]ven a single [common] question will do." *Maldonado v. Apple, Inc.*, 2019 U.S. Dist. LEXIS 159289, at *21-22 (N.D. Cal. Sep. 17, 2019).

This requirement is also satisfied. All of the Class Members purchased one or more of the Products manufactured by Defendant. All of the Class Members allege injury in violation of California's consumer protections laws, and the question whether Defendant's labeling was misleading will resolve "in one stroke" an issue that is "central to the validity of each class member's claims"—whether the Products were promoted in a manner likely to deceive the public under an objective "reasonable consumer" standard. *Guido v. L'Oreal, USA, Inc.*, 2013 U.S. Dist. LEXIS 94031, at *12 (C.D. Cal. July 1, 2013). *See also Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010); *Shahar v. Hotwire, Inc.*, 2013 U.S. Dist. LEXIS 104585, at *9 (N.D. Cal. July 25, 2013) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 501-02 (S.D. Cal. 2013).

### 3.    The Settlement Class Satisfies the Typicality Requirement.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is also satisfied. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The Representative Plaintiff, like the absent Class Members, is a purchaser of the Products during the Class Period, and the claims made by the Representative Plaintiff are typical of the Class he seeks to represent.

### 4.    The Settlement Class Satisfies the Adequacy of Representation Requirement.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with

other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Farrell*, 327 F.R.D. at 428 (quoting *Hanlon*, 150 F.2d at 1020). Class Counsel must be qualified, experienced, and generally able to conduct the proposed litigation. *Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 U.S. Dist. LEXIS 188824, at *34-35 (C.D. Cal. May 29, 2015); *see also Connor v. Automated Accounts, Inc.*, 202 F.R.D. 265, 269-70 (E.D. Wash. 2001).

Multiple California district courts have found the Weston Firm to be adequate class counsel in similar litigation relating to products sold in packaging bearing health claims, holding "there is no question . . . the Weston [Firm has] ample experience handling class actions and complex litigation. It is also clear that [the Weston Firm has] particular familiarity with suits involving issues of mislabeling and the food industry." *Chacanaca v. Quaker Oats Co.*, 2011 U.S. Dist. LEXIS 65023, at *8-9 (N.D. Cal. June 14, 2011) (appointing The Weston Firm interim class counsel over competing firms). *See also Bruno v. Quten Research Inst., LLC*, 2013 U.S. Dist. LEXIS 35066, at *13 (C.D. Cal. Mar. 13, 2013) (appointing the Weston Firm class counsel and noting the firm "displayed competence and diligence in the prosecution of the action"); *In re Ferrero Litig.*, 278 F.R.D. 552, 559 (S.D. Cal. 2011) (appointing The Weston Firm class counsel and finding the firm "would adequately represent the putative class"); *Guttmann v. Ole Mexican Foods, Inc.*, 2015 U.S. Dist. LEXIS 154046, at *9 (N.D. Cal. Nov. 13, 2015) ("Plaintiff's counsel has experience prosecuting food labeling class actions, including those seeking injunctive relief. [citation] The Court finds that proposed class counsel and Plaintiff have sufficiently prosecuted this action on behalf of the class and will continue to do so. The adequacy requirement is therefore satisfied.")

### 5.    The Settlement Class Satisfies the Requirements of Rule 23(b)(2).

Rule 23(b)(2) requires that (1) "the party opposing the class has acted or refused to act on grounds that apply generally to the class," and (2) "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

15

This case meets both of these requirements. Defendant is alleged to have labeled its products in a misleading or unlawful manner that affected all Class Members in the same way. While not every class member may have read the challenged claims, or reacted to them in the same way, this is not relevant under California's UCL and CLRA, which impose only an objective "reasonable consumer" standard. The particular beliefs and circumstances of each class member is not relevant.

> [O]ur courts have not departed in any manner from the principle that liability [under] the broader provisions of the UCL may be found without any individualized proof of deception and solely on the basis a defendant's conduct was likely to deceive

*Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1289 (2002). Indeed, a UCL "violation, unlike common law fraud, can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage." *Id.* at 1290 (quoting *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1105 (1996). Because the UCL and CLRA use an objective standard that does not vary from person to person, they are amenable to class certification because they do not require "'individualized proof of deception, reliance and injury.'" *Pulaski & Middleman, LLC v. Google, Inc*., 802 F.3d 979, 986 (9th Cir. 2015) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009)).

All Class Members by definition purchased Sambazon products containing the allegedly unlawful and/or misleading statements. Courts have held that class certification was proper under Rule 23(b)(2) in similar cases. *See*, *e.g.*, *See Johnson v. Triple Leaf Tea*, 2015 U.S. Dist. LEXIS 170800, at *12-13 (N.D. Cal. Nov. 16, 2015) (granting preliminary approval of injunctive-relief-only class action settlement which "afford[ed] meaningful injunctive relief" in the form of "substantial revis[ion]" to the labels of three products); *Lilly v. Conagra Foods, Inc.*, 2014 U.S. Dist. LEXIS 199102, at *2-4 (C.D. Cal. Sep. 19, 2014) (granting preliminary approval of "injunctive relief only" settlement requiring defendant to comply with applicable FDA labeling regulations).

### C.     The Proposed Form and Method of Class Notice Is Adequate and Satisfies the Requirements of Rule 23.

Class notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Caudle v. Sprint/United Mgmt. Co.*, 2019 U.S. Dist. LEXIS 216056, at *12 (N.D. Cal. Dec. 16, 2019) (quoting *Muliane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)); *see also* Fed. R. Civ. P. 23(e)(1). Class notice also must satisfy Rule 23(c)(2)(B), which provides that the notice must clearly and concisely state the following in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed class notice, modeled on others that have been approved by California federal courts, does each of these. Here, because the product is sold at retail, a list of class members does not exist to notify directly by name. Therefore, the parties agreed to and propose that it will be publicized through Facebook advertisements that will reach 2.5 million American adults, and targeted toward those who are mostly likely to have purchased these products through Facebook's keyword interests system, using the interests keywords Sambazon, antioxidants, superfruit, acai, and acerola. *See Woodard v. Labrada*, 2019 U.S. Dist. LEXIS 162782, at *32 (C.D. Cal. Apr. 23, 2019) ("[T]he court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action and the [settlement]"). Class Notice will also be published in a newspaper of general circulation over four consecutive weeks in Los Angeles County, where the Plaintiff resides, as required by Section 1781 of the Consumer Legal Remedies Act. Retnasaba Decl. ¶¶ 2-13.

The Proposed Notice Plan shall further include a class notice website, which will include (1) links to the Class Notice, (2) the Settlement Agreement, (3) this Motion for Preliminary Approval, (4) if and when issued, the Court's Order granting preliminary approval, (5) Plaintiff's Motion for Attorneys' Fees, Costs, and an Incentive Award, and (6) instructions on opting out and filing of objections. Retnasaba Decl. ¶ 9-11. The Class Notice is written in plain language and contain the information required by Rule 23(c)(2)(B), as well as a user-friendly "Frequently Asked Questions" format. *See* Weston Declaration ¶¶ 10-11 and Ex. 3. Both class counsel and Classaura, LLC, an experienced class action settlement administrator, will be available to further explain the settlement to class members. Accordingly, the Notice and Notice Plan should, respectfully, be approved.

## V. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement Agreement, the parties propose a schedule described in the table below based on the date the Court sets for the Fairness hearing. It order to comply with CAFA's rule that notice be sent to state attorneys general 90 days before the Fairness Hearing to allow them to comment on or object to the settlement, the parties request the Court set the Fairness Hearing about 104 days after its preliminary approval order, allowing two weeks for such notice to be mailed and received.

| Event | Date |
|---|---|
| Publication of Class Notice | Completed within 30 days of the Preliminary Approval Order. |
| Motion for Final Approval | 42 Days before the Fairness Hearing |
| Motion for Attorney Fees and Incentive Award | 42 Days before the Fairness Hearing |
| Deadline for Opt-Outs or Objections | 27 Days before the Fairness Hearing |
| Deadline for notice of intent to appear at the Fairness Hearing | 27 Days before the Fairness Hearing |
| Parties' Response to Objections | 7 Days before the Fairness Hearing |

| Filing a List of Timely Requests for Exclusion | 7 Days before the Fairness Hearing |
|---|---|
| Certification of Service of CAFA Notice | Prior to the Fairness Hearing |

## VI. CONCLUSION

The proposed Settlement is fair, reasonable, and adequate, and falls well within the range for possible approval. For these reasons the Court should, respectfully, grant this motion.

Dated: December 27, 2019                    Respectfully submitted,

/s/ Gregory S. Weston
Gregory S. Weston

**THE WESTON FIRM**
GREGORY S. WESTON
1405 Morena Blvd, Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (619) 343-2789

**Counsel for Plaintiff and the
Proposed Settlement Class**

*Altes v. Sambazon, Inc.*, Case No: 8:19-cv-01340-JLS-JDEx
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT